CHARLES F. PREUSS (State Bar No. 45783)
BRENDA N. BUONAIUTO (State Bar No. 173919)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
charles.preuss@dbr.com
brenda.buonaiuto@dbr.com

Attorneys for Defendants
ORTHO-MCNEIL PHARMACEUTICAL, INC., now known as ORTHO-McNEIL-JANSSEN PHARMACEUTICALS, INC.,
and MCKESSON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MIRANDA ADAMS, an individual; AUDREY ALEXANDER, an individual; FALLON ARENIVAS, an individual; CORRINE BELLUCCI, an individual; RAQUEL BOONE, an individual; DANIELLE BOUDREAUX, an individual; TASHIANA BRADLEY, an individual; CHERI BRANHAM, an individual; RHONDA CARTER, an individual; TAMU CARTER, an individual; STARSHA CLOSE, an individual; THOMASITA CURLEY, an individual; ONILDA DASILVA, an individual; ADELE DUPLECHAIN, an individual; SYLVIA EDWARDS, an individual; MISHEKIA FREELON, an individual; RENATA GAINES, an individual; JANET GUIDRY, an individual; VICTORIA HARRIS, an individual; APRIL JANUTOLO, an individual; OLIVIA JOSEPH, an individual; CHRISTINA MARK, an individual; SHARON MARSHALL-FRYER, an individual; ANNA MARTINEZ, an individual; JESSICA MCDANIEL, an individual; JANICE MCDONALD, an individual; KELVANNTI MORGAN, an individual; WANDA MORGAN, an individual; KELSEY MUNYON, an individual; TONI NICHOLS, an individual; LAKISHA PACE, an individual; ASHLEY PARKER, an individual; YOLANDA PAGE, an individual; ANGELICA PEREZ, an individual; STEPHANIE REAY, an | Case No. _____<br><br>**NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) [DIVERSITY]** |

| | |
|---|---|
| 1 | individual; IVONNE CLAUDIO REYES, an individual; NICHOLE SHULTZ, an individual; CASSANDRA SLIMMER, an individual; NANCY STARTS, an individual; RHONDA STYLES, an individual; MICHELLE TAYLOR-JANSEN, an individual; KEMBLEY THOMAS, an individual; TOINETTA VANHORN, an individual; CAMILLE WILLIAMS, an individual; |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | Plaintiffs, |
| 8 | v. |
| 9 | ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation; MCKESSON CORP. and DOES 1-500, inclusive, |
| 10 | |
| 11 | Defendants. |

**TO THE CLERK OF THE COURT:**

Defendant Ortho-McNeil Pharmaceutical, Inc. ("OMP"), now known as Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMJPI"), removes to this Court the state court action described below, based on diversity of citizenship, pursuant to 28 U.S.C. §1332. As detailed here, the Court should disregard the citizenship of defendant McKesson Corporation ("McKesson") and of plaintiffs Cheri Branham and Renata Gaines ("the Pennsylvania plaintiffs") because those parties are fraudulently joined. In the alternative, the Court should sever the fraudulently joined claims and exercise diversity jurisdiction over all but the Pennsylvania plaintiffs' claims.

**BACKGROUND**

1. On December 3, 2007, the Southern California law firms of Law Offices of Khorrami, Pollard & Abir, LLP and Kabateck Brown Kellner LLP, along with the Colorado law firm of Burg Simpson Eldredge Hersh Jardine PC, filed a First Amended Complaint in a personal injury action in the Superior Court of California, County of San Francisco, entitled *Miranda Adams, et al. v. Ortho-McNeil Pharmaceutical, Inc., McKesson Corp., and Does 1-500, inclusive*, Case Number CGC-07-466704. A copy of

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

#394389v1

the First Amended Complaint in that San Francisco County state court action (the "Complaint") is attached as Exhibit A to the accompanying Declaration of Brenda N. Buonaiuto ("Buonaiuto Dec.").

The 44 individual plaintiffs in the action include residents of 20 states, who seek damages for "potentially fatal side effects" they allegedly suffered from using the Ortho Evra® contraceptive patch, available only by prescription and manufactured by OMP, now known as OMPJI. (Complaint ¶¶ 1, 10-53.) Only five of the 44 plaintiffs reside in California, and they do not reside in San Francisco County, where this action was filed. (Complaint ¶¶ 10-53.) Plaintiffs' claims have nothing in common, other than that they all allege to have used Ortho Evra®. (*See* Complaint.) Plaintiffs allege causes of action for Negligence, Strict Liability Failure to Warn, Breach of Express Warranty, Breach of Implied Warranty, Negligent Misrepresentation, and Fraud against OMP, a Delaware corporation with its principal place of business in New Jersey, now known as OMPJI, a Pennsylvania corporation with its principal place of business also in New Jersey. (Complaint ¶ 54; Buonaiuto Dec. ¶ 3.) Although devoid of any factual allegations against McKesson, plaintiffs' complaint asserts those same claims against McKesson, a Delaware corporation with its principal place of business in San Francisco, California, whom plaintiffs allege "distributed and sold Ortho Evra in and throughout the State of California." (Complaint ¶ 3; Declaration of Greg Yonko, filed in *Abel, Theresa, et al. v. Ortho-McNeil Pharmaceutical, Inc., et al.*, USDC ND CA Case No. C 06 7551 SBA ("Yonko Dec."), attached to the Buonaiuto Dec. as Exhibit B, ¶ 2.)

## BASIS FOR JURISDICTION

2. <u>Basis for Jurisdiction in this Court</u>. This Court has original jurisdiction over this action, and OMP, now known as OMPJI, may properly remove to this Court, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship of all named parties not fraudulently joined. 28 U.S.C. §§ 1332, 1441(a).

    a. <u>Amount in Controversy</u>. Pursuant to California Code of Civil

Procedure Section 425.10(b), the amount of damages sought by plaintiffs is not stated in the Complaint. However, the 44 plaintiffs claim that they have *each* "suffered and/or may continue to suffer potentially fatal side effects such as strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks" from using Ortho Evra®. (Complaint ¶ 1; *see also* ¶ 92, alleging that plaintiffs have suffered "diminished enjoyment of life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.") Plaintiffs further allege that OMP, now known as OMPJI, engaged in "fraudulent" and "reckless" conduct, giving rise to punitive damages claims. (*See e.g.* Complaint ¶¶ 91, 106, 118, 124E, 139.)

Given the nature of plaintiffs' claims, and a review of damages awards and settlement amounts in this judicial district, in cases involving allegations of serious injuries from the use of prescription drugs or medical devices, it is reasonably believed that, if plaintiffs succeeded in proving the allegations of the Complaint, they would each recover a minimum of $75,000 in damages. (Buonaiuto Dec. ¶ 11.) Indeed, plaintiffs claiming substantially similar injuries in the Ortho Evra® MDL have specifically alleged that the amount in controversy in their respective actions exceeds $75,000, exclusive of interest and costs. (*Id.*)

It is therefore "facially apparent" from the nature of the claims alleged and the types of damages sought that the amount in controversy as to each plaintiff in this action exceeds $75,000, exclusive of interest and costs. *See White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (it was "facially apparent" that claim exceeded $75,000 based on plaintiff's "lengthy list of compensatory and punitive damages"); *see also In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 296 (S.D.N.Y. 2001) (concluding that complaint "obviously asserts a claim exceeding $75,000" where plaintiff seeks "compensatory and punitive damages" for alleged "serious and life-threatening medical conditions" due to use of prescription medicine); *International Padi, Inc. v. Diverlink*, 2005 WL 1635347, *1 (9th Cir. Cal. 2005) (court considered plaintiffs' general allegations of unspecified general and special damages "reasonably believed to be in

excess of the jurisdictional limits" of the trial court and their request for injunctive relief to "easily conclude" that the $75,000 amount in controversy requirement was met).

        b.     <u>Citizenship of the Parties</u>. There is complete diversity of citizenship between those parties not fraudulently joined. As alleged in the Complaint, plaintiffs (other than the fraudulently joined Pennsylvania plaintiffs), are citizens variously of Alabama, Arizona, California, Colorado, Florida, Georgia, Illinois, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, New York, Ohio, Rhode Island, South Dakota, Texas, Virginia, and Wyoming. (Complaint ¶¶ 10-53.) At the time the state court action was filed, OMP was a corporation existing under the laws of the State of Delaware, with its principal place of business in New Jersey, and is now known as OMPJI, a corporation existing under the laws of the State of Pennsylvania, with its principal place of business also in New Jersey. (Buonaiuto Dec. ¶ 3.) Therefore, diversity of citizenship exists between those plaintiffs not fraudulently joined and OMP, now known as OMPJI, pursuant to 28 U.S.C. Section 1332.

        c.     <u>All Non-Diverse Parties have been Fraudulently Joined</u>.

        1.     <u>Plaintiffs Fraudulently Joined McKesson.</u> The only other named defendant in this action, McKesson, is a Delaware corporation with its principal place of business in San Francisco, California. (Yonko Dec. ¶ 2.) McKesson has no potential liability to plaintiffs or to any of them. Rather, plaintiffs named McKesson as a "sham" defendant in an effort to destroy diversity and to prevent this case from being removed to federal court and then transferred to the Ortho Evra® MDL, which is pending in the Northern District of Ohio. (Buonaiuto Dec. ¶ 6.)

A defendant is fraudulently joined if "the plaintiff fails to state a cause of action against the defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (where non-diverse defendant is fraudulently joined, there is an exception to the requirement of complete diversity); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("fraudulently joined defendants will not defeat removal on diversity grounds"). "When

determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.'" *Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D.Cal. 2006), *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D.Cal. 1979) ("it is well settled that upon allegations of fraudulent joinder ... federal courts may look beyond the pleadings to determine if the joinder ... is a sham or fraudulent device to prevent removal"). If revealed that the joinder is fraudulent, the Court may dismiss the sham defendant. *Maffei, supra*. McKesson is so fraudulently joined here.

McKesson is fraudulently joined because plaintiffs have not made any material allegations against it. *See e.g. Brown v. Allstate Insurance*, 17 F.Supp.2d 1134, 1137 (S.D.Cal. 1998) (finding in-state defendants fraudulently joined where "no material allegations" against those defendants were made). Here, as demonstrated by the Complaint, plaintiffs' claims are substantively directed against the manufacturer of Ortho Evra® – OMP, now known as OMPJI, and not at McKesson. Indeed, none of plaintiffs' factual allegations, on which all of their causes of action are based, involve McKesson. (*See* "General Allegations" at Complaint ¶¶ 67-82.) Specifically, plaintiffs claim that: OMP obtained FDA approval of Ortho Evra®, despite concerns about its safety; OMP failed to appropriately warn users and prescribing health care providers of the alleged serious risks of using Ortho Evra®; OMP failed to properly or adequately investigate safety concerns about Ortho Evra®; OMP's conduct fell below the duty of care that it allegedly owed to plaintiffs; OMP misrepresented the known risks associated with Ortho Evra®; OMP negligently and recklessly failed to inform the public and prescribing health care providers of the alleged risks of using Ortho Evra®; and OMP was careless and negligent in its manufacturing, testing, selling, distributing, merchandising, advertising, promoting, packaging, and marketing of Ortho Evra®.[1] (*Id.*) Those allegations have

---

[1] As detailed in its Answer, filed simultaneously with this Removal, OMP, now known as OMPJI, denies plaintiffs' allegations and denies that it is liable to plaintiffs in any manner or sum whatsoever.

everything to do with the claimed acts and omissions of OMP, now known as OMPJI, and nothing to do with McKesson.

The only factual allegations that do relate to McKesson fail to state a claim against that defendant. Plaintiffs allege that McKesson "distributed and sold Ortho Evra in and throughout the State of California," and that McKesson "packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Ortho Evra." (Complaint ¶¶ 3, 62.) Notably absent is any allegation that the plaintiffs or any of them fall within the general class of "users" referenced by plaintiffs' conclusory allegations. Even more telling, plaintiffs do not allege that McKesson distributed or sold Ortho Evra® to any of the 44 of them – only five of whom even live in the State of California – or to any of their respective health care providers or pharmacists, much less to all of them. (*See* Complaint.) Further, the Complaint lacks any allegation that McKesson sold or distributed Ortho Evra® outside the State of California, where all but five of the 44 plaintiffs reside. The absence of such allegations compels the conclusion that plaintiffs fraudulently joined McKesson in an attempt to defeat diversity jurisdiction. *See e.g. Lyons v. American Tobacco Co.*, 1997 WL 809677 at *5 (S.D. Ala. 1997) (holding that there is "no better admission of fraudulent joinder" than the failure of plaintiff "to set forth any specific factual allegations" against the non-diverse defendant). Plaintiffs cannot cure this deficiency by relying on allegations directed toward "Defendants" generally or toward OMP. *See In re PPA Products Liability Litigation*, MDL No. 1407, Docket No. C02-423R (W.D.Wash. Nov, 27, 2002), Slip Op. at 5 (attached as Ex. C to Buonaiuto Dec.) (allegations directed toward "defendants" or "all defendants" insufficient).

In short, plaintiffs fail to allege that they received Ortho Evra® sold or distributed by McKesson, a prerequisite to their product liability claims. It is essential that a plaintiff who claims that a product distributed by defendant was defective must prove that defendant was the distributor. *Garcia v. Joseph Vince Co.*, 84 Cal.App.3d 868, 874

(1978) ("Regardless of the theory which liability is predicated upon ... it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product"). Notwithstanding, given that the crux of plaintiffs' claims is an alleged failure to warn of the alleged risks of using Ortho Evra®, there is no legal basis for the causes of action asserted against McKesson.

Under California law, McKesson bears no duty to warn. Rather, the "learned intermediary doctrine" provides that the duty to warn of a drug's risk runs from the manufacturer to the physician, and then from the physician to the patient. *See Brown v. Superio Court (Abbott Labs.)*, 44 Cal.3d 1049, 1061-62, n.9 (1988); *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal.4th 1104, 1116 (1996). The rationale of the learned intermediary doctrine is that the physician is in the best position to determine whether a patient should use a prescription drug, and imposing a duty to warn on others would threaten to undermine reliance on the physician's informed judgment. For this reason, California courts have rejected imposing liability on distributors, including specifically McKesson, for failure to warn of the risks of using a prescription drug. *See e.g. Barlow v. Warner-Lambert Co.*, Case No. CV-03-1647-R(RZx), Slip Op. at 2 (C.D.Cal. April 28, 2003) (attached as Ex. D to the Buonaiuto Dec.) ("the Court finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed [the prescription medication at issue] to pharmacists in California;" motion to remand denied); and *Skinner v. Warner-Lambert Co.*, Case No. CV-03-1643-R(RZx), Slip Op. at 2 (C.D.Cal. April 28, 2003) (attached as Ex. E to Buonaiuto Dec.) (same).

Further, McKesson had no involvement in the development or preparation of the prescribing information for Ortho Evra® and did not have any responsibility for the content of other written warnings concerning Ortho Evra®. (Yonko Dec. ¶ 5.) At no time has McKesson had any involvement with the manufacture, development, testing, packaging, labeling, advertising, promotion, or marketing of Ortho Evra®. (*Id.* ¶¶ 6-7.)

It is therefore a mystery why McKesson is named in this case, other than as a

"sham" defendant to destroy diversity jurisdiction and to prevent OMP, now known as OMPJI, from removing the action to federal court and then transferring it to the Ortho Evra® MDL. Courts have consistently ruled that such collusive tactics are not to be recognized. *See e.g. Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593 (9th Cir. 1996) (noting there is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to countenance the creation of jurisdiction in that manner). The Court should therefore disregard the citizenship of McKesson in determining whether the requisite diversity exists.

        2.     <u>The Pennsylvania Plaintiffs are Fraudulently Joined.</u> Once McKesson drops out of the analysis, there is complete diversity, with the exception of the Pennsylvania plaintiffs. Those two plaintiffs lack any basis to sue OMP, a Delaware corporation with its principal place of business in New Jersey, and now known as OMPJI, a Pennsylvania corporation with its principal place of business also in New Jersey, in a San Francisco, California state court. These plaintiffs do not allege any connection between their alleged injuries and San Francisco, California. (*See* Complaint.) They do not allege that they purchased Ortho Evra® in San Francisco, California or that they saw any health care providers for their claimed injuries here. (*Id.*) Rather, the Pennsylvania plaintiffs reside in Pennsylvania, their alleged injuries presumably occurred in Pennsylvania, and their health care providers and any other relevant witnesses and evidence are presumably located in Pennsylvania. (*Id.* ¶¶ 17, 26.) Their claims against OMP, now known as OMPJI, are therefore more appropriately and justly tried in Pennsylvania. *See* Cal. Civ. Proc. Code § 410.30 ("When a court finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall ... dismiss the action in whole or in part on any conditions that may be just"). There is simply no basis for the Pennsylvania plaintiffs to proceed against OMP, now known as OMPJI, in San Francisco, California.

3. <u>Alternatively, the Court Should Sever All of Plaintiffs' Fraudulently Joined Claims.</u> Alternatively, this Court should sever plaintiffs' unrelated claims into individual actions and take diversity jurisdiction over all of those claims, with the exception of those asserted by the Pennsylvania plaintiffs, so that those actions may then be transferred to the Ortho Evra® MDL. *See In re Diet Drugs Products Liability*, 1999 WL 554584 at *5 (E.D.Pa. 1999) (held that even if non-diverse plaintiff has valid cause of action against defendant, that plaintiff may not prevent removal based on diversity jurisdiction if there is no reasonable basis for joinder with other plaintiffs claims). Indeed, federal "courts have repeatedly held that misjoined plaintiffs will not defeat diversity" and that the remedy is severing the non-diverse claims. *In re Prempro Products Liability Litigation*, 417 F.Supp.2d 1058, 1059 (E.D.Ark. 2006). The *Prempro* court identified a host of other situations where the courts severed misjoined plaintiffs under similar circumstances. *See e.g. In re Orthopedic Bone Screw Products Liability*, 1995 WL 428683 (E.D.Pa. 1995); *In re Rezulin Products Liability Litigation*, 168 F.Supp.2d 136, 145 (S.D.N.Y. 2001); *In re Diet Drugs, supra*, 1999 WL 554584 at *4; and *In re Baycol Products Liability Litigation*, 2003 WL 22341303 (D.Minn. 2003).

These cases are particularly instructive here. Plaintiffs are residents of 20 different states and were therefore presumably prescribed Ortho Evra® by different doctors, used the drug for different lengths of time, and suffered different injuries. The health care providers and other relevant witnesses, all located in counties and states outside San Francisco County, California, would not be compelled to attend trial here. The only thing common among plaintiffs is that they each allegedly used Ortho Evra®. That alone is not enough. *Greene v. Wyeth*, 344 F. Supp.2d 674, 684-85 (D.Nev. 2004) (in 9th Cir.) (held that ingestion of same drug among various plaintiffs not sufficient basis to permit all plaintiffs to join in one action).

The "statutory right of removal has been frustrated by plaintiffs' improper joinder, and the interests of judicial expediency and justice weigh in favor of severance." *Wyeth, supra*, 344 F.Supp.2d at 685. As such, the Court should alternatively sever plaintiffs'

individual claims and should exercise diversity jurisdiction over all but the two Pennsylvania plaintiffs' cases. OMP, now known as OMPJI, can then move the state court to transfer those remaining two cases to Pennsylvania state court – the more appropriate and convenient forum.

        d.    <u>Citizenship of Doe Defendants</u>. Pursuant to 28 U.S.C. Section 1441(a), for purposes of removal, the citizenship of defendants Does 1-500 must be disregarded because plaintiffs sued those defendants under fictitious names.

### REMOVAL TIMELY FILED

3.    Service was made on the registered agent for service of process of OMP, now known as OMPJI, on January 7, 2008. (Buonaiuto Dec. ¶ 3.) McKesson was served, via its registered agent, on January 4, 2008. (Buonaiuto Dec. ¶ 4.) Therefore, this Removal was timely filed within 30 days of service, pursuant to 28 U.S.C. § 1446(b).

### CONSENT TO REMOVAL

4.    The only other named defendant, McKesson, was fraudulently joined, and its consent is therefore not required for removal; notwithstanding, McKesson consents to the removal by OMP, now known as OMPJI, of this action to this Court. (Buonaiuto Dec. ¶ 4.)

### STATE COURT WITHIN THE COURT'S JURISDICTION

5.    The San Francisco County, California Superior Court, from which OMP, now known as OMPJI, removes this action, is within this Court's jurisdiction.

### STATE COURT PLEADINGS

6.    Copies of the state court pleadings known to OMP, now known as OMPJI, to have been filed in this action are collectively attached to the Buonaiuto Dec. as Exhibit A.

### FILING AND SERVICE OF NOTICE OF REMOVAL AND REMOVAL

7.    OMP, now known as OMPJI, will file a notice of the filing of this Notice of Removal and Removal in the San Francisco County Superior Court and will serve plaintiffs' counsel with a copy. (Buonaiuto Dec. ¶ 5.)

1    WHEREFORE, OMP, now known as OMPJI, hereby removes to this Court San
2  Francisco County Superior Court Case No. CGC-07-466704.

3

4  Dated: January 31, 2008                    DRINKER BIDDLE & REATH

5                                             */s/ Brenda Buonaiuto*
6                                             _____
                                               CHARLES F. PREUSS
7                                              BRENDA N. BUONAIUTO
                                               Attorneys for Defendants
8                                              ORTHO-MCNEIL PHARMACEUTICAL,
                                               INC., now known as ORTHO-MCNEIL-
9                                              JANSSEN PHARMACEUTICALS, INC.,
10                                             and MCKESSON CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

#394389v1    NOTICE OF REMOVAL AND REMOVAL                    11                    CASE NO.